UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-15-53-G-1 |
| ) | Case No. CIV-19-412-G |
| DARYL LEE INGRAM, ) | |
|     a/k/a Blacc, ) | |
|     a/k/a Clacc, ) | |
|     a/k/a Ninety Black, ) | |
|     a/k/a BJ, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Defendant Daryl Lee Ingram's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 156). The Government has filed a Response (Doc. No. 164). After careful consideration of the parties' arguments, the relevant authorities, and the case record, the Court determines that no evidentiary hearing is necessary and that the Motion should be denied on the existing record.[1]

I.    *Background*[2]

On February 17, 2015, Detective Jeff Reed of the Oklahoma City Police Department ("OCPD") was surveilling an alleged drug house at 3344 Southwest 24th Street in

---

[1] No evidentiary hearing is required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996).

[2] Except where specifically noted, the factual account provided herein is drawn from the Order and Judgment of the United States Court of Appeals for the Tenth Circuit. *See United States v. Ingram*, 721 F. App'x 811 (10th Cir. 2018).

Oklahoma City, Oklahoma, in connection with a multi-agency federal and state investigation into the Rollin' 90s gang. As he drove down the street in an unmarked police car, Detective Reed observed two men—later identified as Defendant Ingram and his co-defendant, Michael Shandelon Brown—arrive at the residence in a gray Kia Forte. Detective Reed parked in a driveway down the street. Meanwhile, Mr. Brown and Defendant parked in front of 3344 Southwest 24th Street and then went inside.

Detective Reed called the OCPD's Gang Enforcement Unit, specifically, Lieutenant Robert Coniglione, to tell him that he believed a man named Tyree Cade was at 3344 Southwest 24th Street. "Detective Reed asked Lieutenant Coniglione whether he 'and his troops could come over' to the house 'to set up on' the Kia, so they 'could stop it to see if Tyree Cade was in the car.' Suppl. R. Vol. III 290:19-21." *Ingram*, 721 F. App'x at 813.

After requesting assistance, Detective Reed continued surveilling the house and saw Mr. Brown and Defendant leave the house, get back into the Kia, and drive away. Detective Reed noticed that the person he believed might be Tyree Cade, but who was actually Mr. Brown, was driving the car, and that Defendant, whom Detective Reed had not encountered before this incident, was the passenger. He also noticed that when Defendant got back into the Kia, he was carrying a black bag.

> Lieutenant Coniglione and his riding partner, Sergeant Andrew Ritchie, responded to Detective Reed's assistance request. When they arrived in the area, Detective Reed told Lieutenant Coniglione which direction the Kia had traveled. Lieutenant Coniglione and Sergeant Ritchie quickly found the Kia in the neighborhood of 3344 Southwest 24th Street and followed it by two or three car lengths. While following the Kia, Lieutenant Coniglione saw the Kia fail to "maintain its position in its lane" and "drift[ ] left of center" in the road. Suppl. R. Vol. III at 309:18-20. Lieutenant Coniglione testified that he saw the Kia cross the center of the road by about "a quarter of a vehicle

> width." *Id.* at 312:9-11. The time was 3:15 p.m., and the officers' view was unobstructed. Even though the road didn't have a painted center line where Lieutenant Coniglione had seen Brown drift left of center, he could see a yellow center line farther down the "[r]elatively straight" road. *Id.* at 310:13-18, 311:7-11, 313:13-16.
>
> Sergeant Ritchie and Lieutenant Coniglione activated their car's emergency lights, and the Kia stopped. Lieutenant Coniglione and Sergeant Ritchie stepped out from the car and walked toward the Kia. When they reached the rear bumper, "the driver just put [the Kia] in gear and fled the scene." *Id.* at 316:2-4. Sergeant Ritchie and Lieutenant Coniglione returned to their car and "chased after" the Kia, reaching speeds of 60 miles per hour in a 25-mile-per-hour zone. *Id.* at 98:12-17, 316:5-9. While taking a turn too fast, the driver lost control of the Kia, crashed into the front yards of some houses lining the street, and became stuck.
>
> In response to radio transmissions, Detective Wes Cadena and Sergeant George Anderson separately responded to the car chase, learning from a dispatcher that the Kia had crashed. Upon arriving, the two officers saw Brown and Ingram flee the Kia on foot. The two officers chased Brown and Ingram through a yard, past a guard barrier, down an embankment, and up a creek bed before finally subduing and arresting them.
>
> After Detective Cadena and Sergeant Anderson arrested Brown and Ingram, Lieutenant Coniglione searched the Kia and found the black bag that Detective Reed had seen Ingram carry from Anderson's house. The bag contained 650.7 grams of crack cocaine and $4,980. Lieutenant Coniglione found the bag on the front-passenger-side floorboard.

*Ingram*, 721 F. App'x at 814 (alterations in original).

II.     *Trial and Appeal Proceedings*

Prior to trial, Defendant's co-defendant Mr. Brown filed a motion to suppress the crack cocaine and money seized from the Kia, "arguing that the traffic stop was unjustified at its inception" and violated his Fourth Amendment rights. *Id.*; *see* Brown Mot. to Suppress (Doc. No. 42). Defendant did not join the motion to suppress.

> Brown argued that "the isolated incident of drifting left of center, unaccompanied by other driving irregularities," is not a traffic violation under Oklahoma City ordinances. Suppl. R. Vol. V at 5. Specifically, Brown

3

> argued that if a roadway lacks clearly marked traffic lanes, then § 32-191(b) of the Oklahoma City Municipal Code (entitled "Changing lanes") merely requires that "vehicles shall nevertheless keep in line or follow a straight course ***as nearly as practical*** . . ." Suppl. R. Vol. V at 8 (quoting Okla. City Mun. Code ch. 32, art. V § 32-191(b) (1980)). Brown contended that under this forgiving standard, a driver who drifts across the center of a roadway hasn't committed a traffic violation.
>
> The government countered that Oklahoma City ordinance § 32-192 was in fact the traffic law applicable to Brown's case. Section 32-192 provides that "[u]pon all roadways of sufficient width a vehicle *shall* be driven to the right of the center of the roadway," subject to exceptions not at issue. Okla. City Mun. Code ch. 32, art. V § 32-192 (1980).

*Ingram*, 721 F. App'x at 814-15 (alteration and omission in original).

Following a hearing, the Court denied the Motion to Suppress, concluding that § 32-192's omission of the "as nearly as practical" language used in § 32-191 was "a clear indication that strict compliance is required." Order of June 3, 2015 (Doc. No. 67) at 5 (Miles-LaGrange, J.). The Court also found that Lieutenant Coniglione was "a credible witness" who had "observed the vehicle veer into the center lane about a quarter length of the body of the car." *Id.* at 4. Based on Lieutenant Coniglione's testimony, the Court found that Brown's left-of-center veering and correction "amount[ed] to an observed traffic violation giving rise to a reasonable inference that a traffic violation ha[d] occurred." *Id.*

Defendant thereafter was found guilty by a jury of one count of possession of 280 grams or more of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *Id.* The Court sentenced Defendant to life in prison. *See* J. (Doc. No. 111).

Defendant appealed his conviction to the Tenth Circuit, disputing the legality of the traffic stop that led to his arrest. *See Ingram*, 721 F. App'x 811. The appellate court examined the disputed traffic stop in detail and concluded that, even assuming a plain-error

4

standard of review applied rather than a finding of waiver, Defendant could not show that the district court had erred. *Id.* at 815-19; *see also United States v. Olano*, 507 U.S. 725, 732 (1993). More specifically, the Tenth Circuit held that "[u]nder § 32-192's plain language, Lieutenant Coniglione and Sergeant Richie were justified in stopping Brown for failing to remain right of the center of the roadway." *Ingram*, 721 F. App'x at 817-18. The Tenth Circuit also rejected Defendant's argument that suppression was required because the traffic stop had been pretextual, explaining that the Supreme Court has "foreclosed 'any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved.'" *Id.* at 819 (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)). The Tenth Circuit therefore affirmed Defendant's conviction.

Defendant filed a petition for writ of certiorari, which the United States Supreme Court denied on April 23, 2018 (Doc. No. 147). Defendant then filed the instant pro se Motion Under 28 U.S.C. § 2255, raising two claims for relief. *See* Def.'s Mot. at 4-7.

III.     *Standard of Review*

Under 28 U.S.C. § 2255, a prisoner in custody serving a federal sentence may move to vacate, set aside, or correct his or her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

5

The remedy available under § 2255 has two procedural limitations.  First, the statute does not supply relief for issues that have been raised and considered on appeal unless there has been an intervening change in the law.  *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989).  Second, § 2255 "is not available to test the legality of matters which should have been raised on appeal" unless the movant "can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed."  *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994) (internal quotation marks omitted).  "[I]f the government raises [this] procedural bar, the courts must enforce it and hold the defendant's claims procedurally barred unless cause and prejudice or a miscarriage of justice is shown." *Id.*

IV. Discussion

    A. *The Lawfulness of the Traffic Stop*

Defendant first challenges his conviction on the basis that the February 17, 2015 OCPD traffic stop was unlawful because there was no commission of an underlying traffic offense and because it was pretextual in nature.  *See* Def.'s Mot. at 4-5.  As discussed above, however, the Tenth Circuit expressly rejected this argument on Defendant's direct appeal.  *See Ingram*, 721 F. App'x at 816-19.  Defendant therefore is not entitled to relief on this basis under 28 U.S.C. § 2255.  *See Prichard*, 875 F.2d at 791 ("Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255."); *see also United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) (holding that the defendant's arguments

6

were "previously considered and disposed of" on direct appeal and, "[t]herefore, [the defendant] may not raise these issues under § 2255").[3]

### B. The Officers' Use of Personal Cell Phones

At trial, Lieutenant Coniglione testified he received the call for assistance from Detective Reed on his personal cell phone, rather than over the police radio system or on an OCPD-issued cell phone. Trial Tr. (Doc. No. 164-2) at 99:25-101:20. Defendant points to this fact as an additional basis to find that the traffic stop was unlawful. *See* Def.'s Mot. at 6 (arguing that because these officers were on duty, there was no reason for them to use their personal phones unless they were "doing something that [they] didn't want . . . recorded").

Defendant offers nothing beyond his own speculation as to why the officers' use of a personal phone or phones is material—especially considering the jury's awareness of this fact. Further, as referenced above, the Supreme Court has explicitly rejected the proposition "that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Whren*, 517 U.S. at 813. "Subjective

---

[3] In addition to arguing his two claims for relief, Defendant added a check mark next to "[d]enial of effective assistance of counsel" on the form's list of frequently raised grounds for relief. Def.'s Mot. at 4. Even liberally construed, however, Defendant's Motion cannot reasonably be read as presenting a discrete ineffective-assistance claim in connection with any of his arguments. The Court's "rule of liberal construction" for a pro se litigant "stops . . . at the point at which [the Court] begin[s] to serve as his advocate." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009). Further, with respect to the traffic-stop claim, even if it were "cloaked in the guise of an ineffective assistance claim, this is the same issue decided on direct appeal and cannot be raised again in a § 2255 motion." *United States v. Anderson*, 17 F. App'x 855, 858 (10th Cir. 2001).

intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.*; *accord Ingram*, 721 F. App'x at 818-19. Accordingly, relief is not warranted on this claim.[4]

## CONCLUSION

It is therefore ORDERED that Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 156) is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a defendant. A COA may issue only upon "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Upon consideration, the Court concludes that the requisite standard is not met in this case. Therefore, a COA is denied.

A separate judgment shall be entered.

---

[4] Relief on this claim also would be precluded due to Defendant's failure to raise it on direct appeal. *See Allen*, 16 F.3d at 378; *see also* Gov't's Resp. at 7 n.5. Defendant identifies his appellate counsel as the reason for this failure. *See* Def.'s Mot. at 6 (citing his lawyer's failure to communicate). Even assuming Defendant could show "cause," however, he could not establish "actual prejudice resulting from the alleged error" due to the claim's lack of merit. *Allen*, 16 F.3d at 378. Nor is there any suggestion in the record that the Court's failure to address the claim will result in a fundamental miscarriage of justice. *See id.*

IT IS SO ORDERED this 30th day of September, 2022.

_____
CHARLES B. GOODWIN
United States District Judge